IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHNNY BRANCH                                                                    PLAINTIFF

V.                              CASE NO. 5:16-CV-05361

TRANSPLACE FREIGHT SERVICES, LLC                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are a Motion for Summary Judgment (Doc. 25), Brief in Support (Doc. 26), and Statement of Facts (Doc. 27) filed by Defendant Transplace Freight Services, LLC ("Transplace"). On October 23, 2017, Plaintiff Johnny Branch filed a *pro se* motion for leave to file his response out of time, and the Court granted the motion. *See* Doc. 29. Mr. Branch's Response (Doc. 30) was filed of record on October 25, 2017. Transplace elected not to file a reply. As the Motion for Summary Judgment is now ripe, it will be **GRANTED IN PART AND DENIED IN PART** for the reasons explained herein.

## I. BACKGROUND

At the time of the incidents described in the Complaint, Mr. Branch, an African-American male, had been employed at Transplace for 17 years. On July 14, 2016, he and a Caucasian male co-worker named Nick L. became involved in a verbal disagreement in which Nick L. insulted President Obama and called Mr. Branch "boy," perhaps numerous times. According to the declaration of Jessica Lynch, Vice President of Human Resources at Transplace, various witnesses to the disagreement were later interviewed by managers, who in turn documented the witnesses' statements. *See* Doc. 27-2.[1] The witnesses allege

---

[1] Transplace has presented the witness accounts in the form of emails, some of which appear to have been authored by the witnesses themselves, while others appear to be summaries of witness statements prepared by the managers.

that Mr. Branch exchanged words and perhaps insults with Nick L. There remain disputes of fact about exactly what was said in the course of the argument, but all witnesses and Mr. Branch agree that the disagreement did not last long and ended without physical violence.

After the managers interviewed Mr. Branch, Nick L., and the witnesses, the company decided that Mr. Branch's and Nick L.'s behavior violated Transplace's "Core Value" of "Respecting the Individual," and that both men should be fired. Mr. Branch's termination letter states that "[a]ccording to multiple sources," the verbal disagreement was "loud and inappropriate . . . and there was legitimate concern it would turn physical." (Doc. 27-3). The letter also claimed that "several employees had to step in and separate [Mr. Branch] and the other employee," *id.*—a fact that Mr. Branch disputes, *see* Doc. 30, pp. 2-3. Both Mr. Branch and Nick L. were terminated on July 19, 2016. At the time, Mr. Branch was the only African-American employee working for Transplace in the broker division of the company's office in Lowell, Arkansas.

Though Transplace maintains that it fired Mr. Branch due to the nature of this altercation with Nick L., Mr. Branch believes he was dismissed due to his race. In his Complaint, he claims that Transplace failed to promote him during his tenure with the company, and that he was not given an opportunity to apply for promotions within his division. *See* Doc. 1, p. 3. In his response to summary judgment, he attributes this "failure to be promoted" as being "due to his race and [to] retaliation," but he offers no specific facts or incidents to support this claim. *See* Doc. 30, p. 4. From Mr. Branch's perspective, the incident involving Nick L. was one in which Mr. Branch was the victim of verbal harassment and humiliation by another coworker. Rather than fire the aggressor, Nick L.,

2

the company decided to fire Mr. Branch, as well. He maintains that Transplace merely used the argument as pretext for terminating Mr. Branch due to his race. According to Mr. Branch, several similarly-situated Caucasian employees had engaged in similar behavior in the past but were never suspended or fired.

## II. LEGAL STANDARD

The standard of review for summary judgment is well established. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999).

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmoving party must do more than rely on allegations or denials in the pleadings,

and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

"While employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment, and there is no separate summary judgment standard for employment discrimination cases." *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010). A plaintiff can survive summary judgment on a discrimination claim "either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination" using circumstantial evidence. *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). When a plaintiff relies on circumstantial evidence to prove discrimination based on disparate treatment, the claim is analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the burden-shifting framework, the employee must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. A minimal evidentiary showing will satisfy this burden. *Johnson v. Ark. State Police*, 10 F.3d 547, 551 (8th Cir. 1993). Once the employee meets it, a presumption of discrimination is created. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment actions taken. *McDonnell Douglas*, 411 U.S. at 802. "Once the employer's burden is met, the presumption of discrimination disappears, and the employee must prove that the proffered justification is merely a pretext for discrimination." *Pope v. ESA Servs., Inc.*, 406

4

F.3d 1001, 1007 (8th Cir. 2005) (citing *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001)). "At all times, the burden of persuasion remains with the plaintiff." *Id.* (citing *Gagnon v. Sprint Corp.*, 284 F.3d 839, 847 (8th Cir. 2002)).

### III. DISCUSSION

The Court has carefully reviewed the entire record in the case and evaluated all genuine, material disputes of fact in Mr. Branch's favor, as the law requires. With that said, however, Mr. Branch cannot prevail on summary judgment simply by lodging his disagreement with Transplace's arguments. To the extent Transplace has offered proof that Mr. Branch's claims are unsupported by the evidence, Mr. Branch is then "required to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact." *Pace v. Portfolio Recovery Assoc., LLC*, 512 Fed. Appx. 643, 645 (8th Cir. 2013) (per curiam) (quotation and citation omitted).

From the face of the Complaint, it appears that Mr. Branch's claims of discrimination and retaliation are brought under Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act ("ACRA") of 1993. "Claims of discrimination and retaliation are properly analyzed under the same legal framework whether brought under Title VII or ACRA." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011). Beginning with the claim for race discrimination, a prima facie case requires proof that the victim: (1) is a member of a protected class; (2) was meeting his employer's expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of his protected class. *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013).

A claim for failure to promote based on race requires a showing the victim: (1) is a member of a protected group; (2) applied for a promotion to a position for which the employer was seeking applicants and for which he was qualified; (3) was not promoted; and that (4) similarly situated employees who did not belong to the protected class were promoted instead. *Bennett v. Nucor Corp.*, 656 F.3d 802, 819–20 (8th Cir. 2011) (citing *Austin v. Minn. Mining & Mfg. Co.*, 193 F.3d 992, 995 (8th Cir. 1999)).

Lastly, to the extent Mr. Branch claims that he was retaliated against by Transplace, a prima facie case requires a showing that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011) (quotation and citation omitted). Below, the Court will address Mr. Branch's three claims, using the burden-shifting framework set forth in the *McDonnell Douglas* case.

### A. Race Discrimination Due to Termination

Mr. Branch contends he suffered race discrimination due to his termination. He meets the first three factors of the prima facie test for race discrimination easily, as he is a member of a protected class, was meeting his employer's legitimate expectations at the time, and suffered an adverse employment action. He also meets the fourth factor of the test, as he makes at least a minimal evidentiary showing that several Caucasian, similarly-situated employees were involved in verbal altercations at work, but none was fired. *See* Mr. Branch's EEOC Questionnaire, Doc. 30-2 (stating "[t]here have been verbal conflicts between Kriston Barnes and Justin Felts, Richard Scott and Kriston Barnes, Courtney

O'Brien and several employees," and noting that all of these employees are Caucasian and none was suspended or terminated for engaging in this behavior).

Now that Mr. Branch has set forth a prima facie case, the burden shifts to Transplace to proffer a legitimate, non-discriminatory reason for termination. Here, Transplace contends that the altercation between Mr. Branch and Nick L. violated the workplace code of conduct, and that both individuals involved in the conflict were fired. This decision was based upon Transplace's belief that the confrontation was "a loud and inappropriate verbal altercation . . . and there was a legitimate concern it would turn physical." (Doc. 27-3).

Mr. Branch responds that the reason offered by Transplace for firing him is pretextual. He contends, first, that he was not the aggressor in the verbal altercation with Nick L., but was instead the victim of Nick L.'s racially motivated slurs and harassment. Second, he maintains that firing employees for engaging in verbal altercations, such as the one he was in, was an unprecedented move by Transplace. According to Mr. Branch, several Caucasian coworkers of his had been involved in similar verbal disagreements at work, but had never been suspended, let alone fired. Third, Mr. Branch points to his long tenure with the company and notes that he never presented the company with any cause to fire him prior to the incident with Nick L.[2] He therefore contends that Transplace simply seized upon the incident to justify firing him due to his race.

---

[2] Other than the disagreement with Nick L., Transplace offers no another reason for firing him. The company's termination letter acknowledges Mr. Branch's "long tenure with Transplace," and notes that in Mr. Branch's particular case, the company "ma[de] an exception" to its usual policy of refusing to pay fired workers for any unused vacation time. (Doc. 27-3, p. 1).

7

Transplace offers no rebuttal to Mr. Branch's pretext arguments, and thus, has failed to meet its burden on summary judgment. Mr. Branch, on the other hand, has identified in his prima facie case and in his pretext argument several similarly-situated Caucasian coworkers who engaged in the same or similar behavior that he did, yet were not disciplined in the same way. Mr. Branch is not required to establish that racial discrimination was the one and only reason why he was fired. Instead, Title VII, as amended by the Civil Rights Act of 1991, provides that an unlawful employment practice is established when a plaintiff "demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, *even though other factors also motivated the practice*," 42 U.S.C. § 2000e–2(m) (emphasis added). In other words, Mr. Branch meets his burden on summary judgment by setting forth facts and evidence that "both discredit the employer's articulated reason and demonstrate the 'circumstances permit a reasonable inference of discriminatory animus.'" *Johnson v. Securitas Security Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 855 (8th Cir. 2012)). He has done so here, and therefore, his claim for race discrimination will survive for trial.

### B. Race Discrimination Due to Failure to Promote

Mr. Branch's second claim is that Transplace failed to promote him due to his race. Although it is clear that Mr. Branch is a member of a protected group, neither the Complaint nor his response to the Motion for Summary Judgment gives any details as to his failure-to-promote claim. For example, he never discloses when he applied for certain jobs within Transplace, the names of the positions he applied for, or whether any similarly-situated employees—who were not members of his race—in fact received these

promotions instead. According to the Supreme Court, a discrete act, such as a failure to promote, "starts a new clock for filing charges alleging that act." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). As the Court has no information as to when any alleged failure to promote occurred, there is no way to make even a threshold finding that the claim was timely filed with the EEOC. In any event, Mr. Branch has failed to set forth a prima facie case to support this claim, and it is therefore dismissed.

### C. Retaliation

Mr. Branch's third and final claim is for retaliation. A prima facie case for retaliation requires a showing that the claimant engaged in protected activity and suffered an adverse employment action as a result. "To make out a retaliation claim, the plaintiff must show that the protected conduct was a 'determinative—not merely a motivating—factor' in the employer's adverse employment decision." *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir.2008) (quoting *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1053 (8th Cir.2007)).

Although the record on summary judgment contains very little information about the retaliation claim, it appears Mr. Branch's main contention is that his firing was retaliatory in nature because it came only after his supervisors found out about Nick L.'s racially-motivated comments. Assuming Mr. Branch's reporting of Nick L.'s comments constitutes protected speech under Title VII, Mr. Branch has failed to show any evidence of a causal nexus between his complaint and his eventual firing. Unlike the proof he presented on his claim of race discrimination, Mr. Branch offers nothing but speculation to substantiate his claim that he was fired in retaliation for engaging in protected speech. "A party's 'unsupported self-serving allegation[ ] that [his] employer's decision was based on

retaliation does not establish a genuine issue of material fact.'" *Jackson*, 643 F.3d 1081, 1088. This claim is therefore dismissed.

## IV. CONCLUSION

For the reasons explained herein, Defendant Transplace Freight Services, LLC's Motion for Summary Judgment (Doc. 25) is **GRANTED IN PART AND DENIED IN PART**. The Motion is denied as to Mr. Branch's claim that his termination was racially motivated and constituted illegal discrimination. The Motion is granted as to all other claims, which are **DISMISSED WITH PREJUDICE**.

With regard to the apparent point of contention between the parties as to which Transplace entity was Mr. Branch's employer and should stand trial in this matter, the Court hereby **ORDERS** the parties to meet and confer, and then file a joint stipulation on the record no later than **December 4, 2017**, identifying the name of the correct Transplace entity that is being sued and will appear at trial.

**IT IS SO ORDERED** on this 21st day of November, 2017.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE